WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Darryl Waldrep, | No. CV-17-04609-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On December 13, 2017, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) On December 20, 2019, Magistrate Judge Bibles issued a Report and Recommendation ("R&R") concluding the Petition should be denied. (Doc. 53.) Afterward, Petitioner filed objections to the R&R (Doc. 55), Respondents filed a response (Doc. 69), and Petitioner filed a reply (Doc. 71). For the following reasons, the Court will overrule Petitioner's objections to the R&R and terminate this action.

I. Background

The relevant factual and procedural background is set forth in the R&R. In summary, in late November 2013, Petitioner molested his 11-year-old step-daughter by rubbing her breasts, licking her vagina, and rubbing her anus. (Doc. 53 at 1.) A few days later, Petitioner made various admissions during a phone call that, unbeknownst to him, was being recorded by the police. (*Id.* at 2.) Petitioner also made similar admissions to his brother and to the victim's mother. (*Id.* at 2 & n.1.)

1     Following his arrest in December 2013, Petitioner was initially represented by
2 retained counsel. (*Id.* at 2-3.) However, in May 2014, Petitioner's retained counsel
3 withdrew from the representation and Petitioner obtained appointed counsel. (*Id.* at 3.)
4 The trial court then "granted numerous motions to continue so that [new counsel] could
5 investigate the case and conduct plea negotiations." (*Id.*)

6     In October 2015, Petitioner attended a settlement conference. (*Id.*) During the
7 conference, the prosecutor offered a plea deal with a stipulated sentencing range of 20-24
8 years' imprisonment, which Petitioner rejected because "he would not acquiesce to a prison
9 sentence." (*Id.* at 4.) Petitioner also "read a statement professing remorse for his actions"
10 and "attribut[ing] his actions to a deer antler testosterone spray prescribed by his doctor for
11 chronic fatigue." (*Id.*) After the settlement conference, Petitioner sought and obtained new
12 appointed counsel. (*Id.* at 5.)

13     In February 2016, Petitioner attended a second settlement conference. (*Id.*) During
14 this conference, the prosecutor informed Petitioner that his deer-antler-spray defense was
15 "problematic because [Petitioner] had voluntarily used the deer antler spray, and voluntary
16 intoxication was not a defense under Arizona law." (*Id.* at 6.) Nevertheless, the prosecutor
17 informed Petitioner "that he was willing to deviate from the typical offer and offer
18 [Petitioner] a sentencing range of 17 to 24 years' imprisonment," contingent upon
19 obtaining supervisory and victim approval. (*Id.*) Petitioner responded by stating that a 17-
20 to-24-year sentence would be a disproportionate and unreasonable punishment for "five
21 minutes" when he "really screwed up." (*Id.*) After some additional back and forth, during
22 which the prosecutor stated that no better plea offers would be forthcoming, the settlement
23 judge stated that the conference was over and the trial date would be affirmed. (*Id.* at 8.)
24 In response, Petitioner stated: "I won't turn it down yet." (*Id.*)

25     On March 3, 2016, Petitioner attended a third settlement conference. (*Id.*) During
26 this conference, Petitioner's counsel acknowledged that the case against Petitioner was
27 "relatively straightforward" because he had "confessed three different times to three
28 different people." (*Id.* at 8-9.) After further discussion, during which the prosecutor again

confirmed that no better plea deals would be forthcoming, Petitioner stated that he wanted to have "a few days to talk with family" about whether to accept the current offer. (*Id.* at 9.)

On March 9, 2016, Petitioner signed a written plea agreement that provided for a stipulated sentencing range of 17-24 years. (*Id.*) During the change-of-plea hearing, Petitioner was represented by counsel and repeatedly confirmed that he understood the plea agreement and had not been forced, threated, or coerced into pleading guilty. (*Id.* at 9-12.)

On April 11, 2016, Petitioner's sentencing hearing took place. (*Id.* at 12.) Although the prosecutor asked for a 24-year sentence, the judge imposed the lowest possible sentence that was available under the plea agreement of 17 years. (*Id.* at 12-14.)

After sentencing, Petitioner filed a timely notice of post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (*Id.* at 14.) The trial court appointed PCR counsel, but counsel filed a notice averring that he was unable to identify any colorable claims for relief. (*Id.* at 15.) Petitioner thereafter filed a "revised" PCR petition that "included extensive exhibits" and listed "34 separate claims of error." (*Id.* at 15.)

On October 25, 2016, the trial court denied relief. (*Id.*) Among other things, the court concluded that Petitioner could not prevail on a claim of ineffective assistance of counsel ("IAC") because he could not demonstrate deficient performance or prejudice. (*Id.* at 15-16.)

On November 20, 2016, Petitioner filed a petition for review with the Arizona Court of Appeals that raised 28 claims of IAC. (*Id.* at 16-17.)

On November 29, 2017, the Arizona Court of Appeals granted review and denied relief. (*Id.* at 17-18.)

In December 2017, Petitioner filed the Petition. It asserts 65 grounds for relief. (*Id.* at 18-23 [summarizing grounds].)

Between December 2017 and the present, Petitioner filed an array of often frivolous

motions.[1] Additionally, Petitioner filed a petition for a writ of mandamus (Doc. 51), which the Ninth Circuit denied in November 2019 (Doc. 67), and a premature notice of appeal (Doc. 65), which the Ninth Circuit dismissed in February 2020 (Doc. 68).

The R&R was issued in December 2019. (Doc. 53.) It is 51 pages long and painstakingly analyzes each of Petitioner's 65 asserted grounds for relief. First, the R&R concludes that Ground 4 must be rejected because it alleges errors during the PCR process, which are not cognizable on federal habeas review. (*Id.* at 18 n.6.) Second, the R&R concludes that Grounds 1-3, 5-15, 17-18, 53-54, and 60 must be rejected because they raise pre-plea claims of non-jurisdictional error, yet such claims are considered procedurally defaulted under Arizona law upon entry of a guilty plea, this Arizona law constitutes an independent and adequate state ground barring federal habeas review, and Petitioner cannot evade these principles because his guilty plea was knowing and voluntary. (*Id.* at 24-26, 30-32, 37-40.) Third, the R&R concludes that Grounds 16, 56, and 64 must be rejected because Petitioner failed to present them to the Arizona Court of Appeals, rendering them procedurally defaulted without cause. (*Id.* at 26-29.) Fourth, the R&R concludes that Grounds 19-38, 40-42, 44, 46-47, 51-52, 55, and 58, all of which raise claims of IAC before or during the guilty plea, must be rejected because Petitioner cannot demonstrate deficient performance, Petitioner cannot demonstrate prejudice, and/or the claim is procedurally defaulted due to the guilty plea. (*Id.* at 33-37, 40-46.) Fifth, the R&R concludes that the remaining claims (Grounds 39, 43, 45, 48, 49, 50, 57, 59, 61, 62, 63, and 65) fail for various reasons. (*Id.* at 46-49.)

…

---

[1] Doc. 3 (motion for judgment); Doc. 6 (motion for summary judgment); Doc. 9 (motion to vacate judgment); Doc. 10 (motion for relief); Doc. 14 (motion for answers to previous motions); Doc. 21 (motion to appoint counsel); Doc. 22 (motion to produce transcripts); Doc. 31 (motion for direct ruling); Doc. 33 (motion for judgment as a matter of law); Doc. 34 (motion for ruling); Doc. 36 (motion for ruling); Doc. 39 (motion to enter newly discovered evidence); Doc. 40 (motion for status update); Doc. 41 (motion for final judgment or summary judgment); Doc. 43 (motion for de novo review); Doc. 45 (motion for reconsideration); Doc. 46 (motion for change of judge); Doc. 47 (motion to vacate judgment); Doc. 49 (motion to appoint counsel); Doc. 52 (motion for status hearing); Doc. 61 (motion invoking mailbox rule); Doc. 62 (motion to stop *Brady* violations); Doc. 72 (motion for summary judgment).

II.    <u>Legal Standard</u>

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file *specific* written objections to the proposed findings and recommendations.") (emphasis added).

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[2]

III.    <u>Analysis</u>

Although Petitioner has filed lengthy objections to the R&R (Doc. 55),[3] his objections are too vague and generalized to permit meaningful review. For example, the objections begin by asserting that "<u>none</u> of [Petitioner's] constitutional claims and

---

[2] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

[3] *See generally* Doc. 59 at 2 (denying Respondents' motion to strike Petitioner's objections but clarifying that "[t]o the extent the 'exhibits' to Petitioner's objections contain any arguments not presented in the 17-page objections, such arguments will not be considered by the Court").

- 5 -

supporting law, precedent of 100's of U.S. Sup[reme] C[ourt], and Fed[eral] District Court ruling were given PROPER CONSIDERATION or mentioned by Magistrate Bibles in the R&R" and that "[f]or this Court to be just, upon reviewing entire record ANEW, DE-NOVA, IT WILL GRANT RELIEF REQUESTED." (*Id.* at 2.) Similarly, on the next page, Petitioner contends that "[Petitioner] overcomes ALL PROCEDURAL BARS, DENIED ANY REVIEW OF CLAIMS, based on jurisdiction, state adjudicated claims 'ON MERITS' or ANY DEFAULTS denied by [Petitioner]." (*Id.* at 3.) These are not proper objections to an R&R—they offer only conclusions and fail to explain, with any specificity, why the R&R's analysis was erroneous.[4]

Similarly, although Petitioner has offered some citations to case law, those references merely consist (as Respondents point out in their response) of "list[ing] a number of legal propositions and cases without explaining how they even relate[] to his claims (let alone how they would allegedly undermine the R&R's reasoning)." (Doc. 69 at 2.) Once again, this is insufficient to permit meaningful review under Rule 72(b).

The bottom line is that Petitioner's generalized objections to the R&R leave the Court with nothing to review. *Warling,* 2013 WL 5276367 at *2; *Haley,* 2006 WL 1980649 at *2; Gensler, *supra*, at 422. Thus, the Court will adopt the R&R's recommended disposition.

Accordingly, **IT IS ORDERED** that:

(1)  Petitioner's objections to the R&R (Doc. 55) are **overruled**.

(2)  The R&R's recommended disposition (Doc. 53) is **accepted**.

(3)  The Petition (Doc. 1) is **denied**.

(4)  A Certificate of Appealability and leave to proceed in forma pauperis on

---

[4]  Petitioner's reply is similarly filled with conclusory assertions. (*See, e.g.,* Doc. 71 at 2 ["[Petitioner] again proclaims all his 65 constitutional grounds presented in his habeas corpus petition, [Petitioner] PROVES ALL GROUNDS ARE PROVEN TRUE, and COLORABLE by his established records, transcribes, notarized affidavits of facts, audio recordings; video recordings presented in States EVIDENCE."]; *id.* at 3 ["[Petitioner] has clearly, unequivocally; has UNIFORMALLY pointed out all of his SPECIFIC CONSTITUTIONAL VIOLATIONS he suffered and has presented specific CASE LAW; rights, privileges, his transcripts, records, affidavits of facts; and AGAIN REQUESTS HIS DENIED BRADY MATERIALS."].)

appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right.

   (5) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 29th day of April, 2020.

                      Dominic W. Lanza
                      United States District Judge